IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

M. RANDY RICE, as Chapter 7 Trustee                                                      PLAINTIFF

v.                                  Case No. 4:11-cv-00386-KGB

LUKEN COMMUNICATIONS, LLC                                                           DEFENDANT

## OPINION AND ORDER

Before the Court is the motion for summary judgment filed by defendant Luken Communications, LLC ("Luken Communications") (Dkt. No. 83). Plaintiff M. Randy Rice, as Chapter 7 Trustee ("Trustee Rice"), has responded (Dkt. No. 98).

Trustee Rice at the time of filing the operative complaint was the Chapter 7 Trustee of Equity Media Holdings Corporation ("Equity Media") and its jointly administered subsidiary debtors, including C.A.S.H. Services, Inc. ("C.A.S.H."). He initiated this adversary proceeding in bankruptcy court to avoid and recover an alleged preferential and fraudulent transfer of an interest in property from the transferors or transferor Equity Media and/or C.A.S.H. to defendant Luken Communications. On June 24, 2008, Equity Media, C.A.S.H., and Retro Programming Services, Inc., on the one hand, and Luken Communications, on the other hand, closed the Stock Purchase Agreement.[1] Trustee Rice seeks to avoid the RTN Transfer on the basis that the purchase by Luken Communications constituted a preference under 11 U.S.C. § 547 and constituted a fraudulent conveyance pursuant to 11 U.S.C. § 548 and the Uniform Fraudulent Transfer Act, Ark. Code Ann. § 4-59-201 *et seq*. Trustee Rice also seeks to recover the alleged preferential and fraudulent transfer under 11 U.S.C. § 550.

Luken Communications asserts that 11 U.S.C. § 546(e) provides a complete defense to Trustee Rice's claims. Luken Communications also asserts that Trustee Rice's state law claims

---

[1] The Court will refer to this transaction as the "RTN Transfer," as the parties have.

under the Arkansas Fraudulent Transfer Act ("AFTA") are subject to the same defense through the doctrine of preemption. For the reasons set out below, Luken Communications's motion for summary judgment is denied (Dkt. No. 83).

## I.    SUMMARY JUDGMENT STANDARD

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A 'genuine issue' in the context of a motion for summary judgment is not simply a 'metaphysical doubt as to the material facts.'" *Id.* Rather, "a genuine issue exists when the evidence is such that a reasonable fact finder could find for the non–movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). When ruling on a motion for summary judgment, a court must view all facts in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989) (citing *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1224–25 (8th Cir. 1983)).

## II.     THE STOCKBROKER DEFENSE UNDER 11 U.S.C. § 546(e)

Trustee Rice seeks to avoid the RTN Transfer under 11 U.S.C. § 548(a)(1)(B) and the AFTA and seeks to recover the RTN Transfer under 11 U.S.C. § 550. Luken Communications asserts that 11 U.S.C. § 546(e) provides a complete defense to Trustee Rice's avoidance claims. Section 546(e) sets out an affirmative defense known as the "stockbroker defense." *In re Forex Fid. Int'l*, 222 F. App'x 806, 807 (11th Cir. 2007). The Court begins with the text of 11 U.S.C. § 546(e), which, in pertinent part, provides as follows:

> [T]he trustee may not avoid a transfer that is a . . . settlement payment as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a . . . financial institution . . . or that is a transfer made by or to (or for the benefit of) a . . . financial institution . . . in connection with a securities contract, as defined in section 741(7)[.]

11 U.S.C. § 546(e).

Luken Communications asserts that § 546(e) provides a safe harbor from avoidance because (1) the RTN Transfer was a settlement payment made by, to, or for the benefit of a financial institution; and (2) the RTN Transfer was made by, to, or for the benefit of a financial institution in connection with a securities contract.

### A.     WAIVER

Trustee Rice contends that Luken Communications has waived the stockbroker defense. Trustee Rice asserts that Luken Communications has raised the stockbroker defense for the first time in its motions for summary judgment and that "[t]his is the first the Trustee has heard of it" (Dkt. No. 99, at 6). Trustee Rice states that Luken Communications "is seeking summary disposition of the Trustee's claims on a defense that has never been pleaded or even mentioned" (Dkt. No. 99, at 6).

"Generally, failure to plead an affirmative defense results in a waiver of that defense. The Supreme Court has indicated that the Rule 8(c) pleading requirement is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it." *First Union Nat. Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007). The Eighth Circuit has "eschewed a literal interpretation of the Rule that places form over substance" and has "held that when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." *Id.*

"[T]he real question is whether the plaintiff receives notice of the affirmative defense sufficiently early that the plaintiff is not prejudiced in its ability to respond." *Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1385 (N.D. Iowa 1996) (citing *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991)). "Consequently, where circumstances merit it, courts may accept affirmative defenses raised at various stages of litigation, including summary judgment." *Doran v. Missouri Dep't of Soc. Servs.*, No. 07-CV-04158-NKL, 2008 WL 4151617 (W.D. Mo. Sept. 2, 2008) (citing *Garst*, 917 F.3d at n.5).

In *Doran*, the district court allowed affirmative defenses raised for the first time in the motion for summary judgment because the defendant's answer placed the plaintiffs "on notice of the issues surrounding its additional defenses" such that the court treated "the new affirmative defenses as an amendment to the Defendants' Answer" *Id.*

Trustee Rice cites *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008), in which the Eighth Circuit concluded that a trial court abused its discretion when allowing the defendant to amend its answer and plead the affirmative defense of preemption "two and a half years after the suit was filed; a month after the close of discovery; a month after it raised the defense in its summary judgment motion; almost eighteen months after the deadline for

amending pleadings; and eight full months after it was actually aware of the preemption defense's applicability."

Here, "[t]his adversary proceeding has been on file for two and a half years, discovery is closed, the deadline to amend pleadings has long since passed," and trial is set to begin on June 17, 2013 (Dkt. No. 99, at 7).  Luken Communications's pending motion for summary judgment based on the stockbroker defense was filed less than one month before trial, with Trustee Rice's response filed two weeks before trial.  As Trustee Rice asserts, this is the first instance that the stockbroker defense appears in the record.  It was not pleaded in the answer nor was it the subject of a motion to dismiss.

The Court concludes that waiting until this point in the litigation to raise for the first time this affirmative defense results in unfair surprise and prejudice to Trustee Rice.  This case is more akin to *Sherman* than to *Doran*.  Unlike the "new" defenses in *Doran*, the stockbroker defense is a new theory of defending this case.  There is nothing in the record before the Court to support a determination that this defense could not have been raised earlier in the litigation.  Had this defense been raised earlier in the litigation, Trustee Rice could have conducted discovery on the affirmative defense and been prepared to rebut the affirmative defense at trial, if necessary.  There also is nothing in the record before the Court to support a determination that Trustee Rice should have been on notice of this defense earlier in the litigation, despite Luken Communication's failure to plead it.  Like the defendants in *Sherman*, Luken Communications waited until the eve of trial to raise this new defense.  Therefore, the Court concludes that Luken Communications waived the defense in 11 U.S.C. § 546(e).

### B.     APPLICABILITY

Even if the Court did not find that Luken Communications waived the stockbroker defense, however, the Court would conclude that Luken Communications is not entitled to judgment as a matter of law on the stockbroker defense based on the record before the Court. There are factual issues in dispute that preclude the Court from determining whether Luken Communications would be entitled to invoke the legal stockbroker defense.

Trustee Rice states that Luken Communications "is attempting to take the fact that the debtors used the proceeds from the sale of the RTN to pay down their debt and contort it into an affirmative defense. But the fact that the Debtors used the proceeds to pay down their debt does not somehow render the Defendant a financial institution entitled to invoke the stockbroker defense. The fact that the Debtors instructed the Defendant to wire the money directly to the Debtors' lenders rather than directly to the Debtors does not make this a broker transaction" (Dkt. No. 99, at 10-11). Trustee Rice further asserts that "[t]here are no lending institutions involved in this litigation. The only parties are the Trustee and the Defendant. No banks will be subject to disgorgement if the Trustee avoids the RTN Transfer, nor could they be." (Dkt. No. 99, at 11-12).

The record makes clear that neither the transferor nor the transferee of the RTN Transfer were financial institutions within the meaning of the stockbroker defense. Although Luken Communications asserts the RTN Transfer was made "for the benefit of" a financial institution such that the stockbroker defense applies, this Court concludes there are disputed questions of fact regarding whether this assertion is true (Dkt. No. 99, at 11-12). Likewise, the record before the Court does not demonstrate on undisputed facts, as a matter of law, that the RTN Transfer, and specifically the agreement to use the proceeds from the sale of RTN to pay down the debts of

Equity Media, qualifies as a "settlement payment" as defined in 11 U.S.C. § 741(8) or a "securities contract" as defined in 11 U.S.C. § 741(7).

Based on the record before the Court, Trustee Rice and Luken Communications dispute the parties in interest to the RTN Transfer and the terms of the RTN Transfer at issue. For example, Luken Communications disputes what it contends is Trustee Rice's "loose characterization of Equity Media as a party to the sale of RTN under the S[tock] P[urchase] A[greement]" (Dkt. No. 97, at 3). In the record before the Court, Luken Communications advances the argument "that it is only the financial condition of C.A.S.H. Services, the actual seller in the RTN Transfer, that is relevant in this matter" (Dkt. No. 90, at 10). Luken Communications also asserts that "Equity Media's role in the transaction, and consequent inclusion in the S[tock] P[urchase] A[greement] documentation, arose out of related agreements, reservations of right, and the design of the transaction to pay debts of Equity Media as parent to the Seller, C.A.S.H. Services, Inc." (Dkt. No. 97, at 3).

On the record currently before the Court, the Court is unable to conclude that the stockbroker defense applies.

### III.    CLAIMS UNDER THE AFTA

Luken Communications asserts that Trustee Rice's claims under the AFTA are preempted by federal law "due to a safe harbor provision under state law" (Dkt. No. 84, at 13). Because the Court has determined that Luken Communications has waived the defense set out in 11 U.S.C. § 546(e), Luken Communications's motion for summary judgment as to Trustee Rice's claims under the AFTA is denied.

\*   \*   \*

For these reasons, Luken Communications's motion for summary judgment is denied (Dkt. No. 83).

SO ORDERED this the 10th day of June, 2013.

_____
Kristine G. Baker
United States District Judge